I don't know whether the clock will work automatically. Maybe we ought to wait a minute for the clerk to get back. Is the clerk the one who starts the clock, Your Honor? Do you want to submit? I have only changed a judge's mind at oral argument once in my life. I guess I'm just not that persuasive of an oral arguer. I never ask, is it Flava or Flava? I say Flava. I say Flava too. You better know. Good morning, Your Honor. Allow me to introduce myself. My name is Scott Hubbard and I represent the plaintiff and appellant, Chris Kohler. I know the panel's read my briefs and are familiar with my issues. In this case, we discussed equivalent facilitation under the ADA in both pleading and substance. I know the court's read the briefs and is familiar with the issues, so unless the panel has any specific questions for me, I'll reserve the rest of my time. Help me out why having a longer bench hurts. Most disabled individuals, this isn't in the record, this is just based on my experience from 1,500 ADA lawsuits that I've litigated. Most disabled individuals, when they are in rehab, hospital, or training, they train on a specific bench that's 48 to 24 inches long. Now, in this case, having a longer bench that's stretched across the entire length of the dressing room precluded Chris Kohler from making diagonal transfers. Now, it might not seem like much, but there's two ways to transfer out of your wheelchair. One is, forgive me, one is you pull up kitty corner and then hop over, and the other is you come up parallel and scoot over. Now, again, not in the record, most prefer diagonal transfers because that's for lack of a better word. You have 60 inches and it goes up. It is true, not the 60 inches, but the fact that it uses up all the space. Yes, that's it. Well, actually, I think what it is is that it's not 48 inches is the primary concern. But the practical effect of it, if the room were 60 inches and the bench was 60 inches, you couldn't do the diagonal transfer. Exactly. Other than that, I understand. But to say that it's just because it's not 48 inches, that argument, if it's 49 inches, if it's 50 inches and there's room for the diagonal transfer, what's the harm there? Just from a logical standpoint, the more space, the more clear space, the closer the wheelchair, the disabled person can get to the bench to make the transfer. That's why in the 2010 standards, they upped it to 36 inches, so they get exceedingly close to make the switch. Smaller spaces means smaller transfers. And what's the approximate width of a wheelchair? Once again, yes, it depends. I have a client in prison who, and this is a source of contention in prison, you have, for lack of a better term, morbidly obese individuals who need sizable chairs, larger chairs to move around in. Smallest is what? You know the answer to that? About 30 inches, 32 inches? It's not in the record. My mom has been, you know what, my mom passed away last year. She was in a wheelchair for 36 years and I never asked her how long her, how wide her wheelchair was. But wide enough to get through the doors, I guess, would be the answer that I would say. The question is, is the wheelchair 12 inches? No, no, does the 12 inches make a difference? Yes, yes, because 12 inches lets you get close, it allows you to make a diagonal transfer. 36 inches is obviously better, and that's why in the new standards it says it has to be 36 inches for diagonal transfers. Older plaintiffs just had to make do. And the Department of Justice, when they provided the new standards, threw us a bone in that respect. Mr. Hubbard, Judge Gould, if I could ask you a question. What in the regulation do you think, or in the guidelines, most supports your theory that the design should facilitate a diagonal transfer as contrasted with a lateral transfer? Besides the plain language of the 2010 standards? The 2010 standards explicitly state that disabled individuals, that a clear space will be on the end so that disabled individuals can make a diagonal transfer onto a bench. So we were afforded that right in 2010. So where was the non-compliance with the 1991 standard, which did not so require? I'm sorry, one more time, Your Honor? Where was the non-compliance with the 1991 standard in this case? Since there could be a parallel transfer. Fair enough. The original, the plain language of the 1991 standards requires, mandatory, shall have a 48 inch long bench. Is it your argument that where it says at least, then it says at least, and here it doesn't say at least, it says it shall be 48, and that's your basic argument, that when they left out at least, they differentiated it and that made it a mandatory 48? Indeed, Your Honor. And is that your answer to Judge Motz's question of what there is in the regulations that supports your argument? I think what I understand your argument to be is that if they had meant at least, they would have done what they did with the other provisions where they said at least. Yes, Your Honor. And is that your basic argument? Yes, Your Honor. Okay, it doesn't say anything about diagonal, but you say that's the purpose of saying it must be 48. It does not say anything about diagonal in the 1991 standards. That's correct. And if the defense had made a bench that was exactly 48 inches long, surrounded by walls, we wouldn't be in a position to complain about anything, because then they would have complied with the plain language of the 1991 statutes. But doesn't the room have to be 60 inches? But the room has to be 60 inches. It is possible to design a bench that's surrounded by three walls on the side and have 60 inches of clear space in front of it, but that's a different conversation and a different case. But that's your basic argument and answer to, I think, Judge Gould's question and Judge Motz's question. Your argument is purely a question of statutory construction and effect, that this one doesn't say at least and others do, and therefore they meant this to be exactly 48 inches and no more. Indeed, Your Honor. And is there any other argument? Plus the fact that when they adopted the newer standards, they made that more explicit because of the possible confusion over the earlier one. I could not have said it better myself, Your Honor. Well, then you don't need to say anything else. Okay. I think my question really related to the standards that were in effect here. I guess from 1991, ADA AG, is that right? Yes, Your Honor. So they didn't have the diagonal transfer language in them. And I was just trying to find out from you what you thought was the best language argument that would permit your contention that there had to be room here for that. The best language argument I have is found in the safe harbor. The Department of Justice, if you read the interpretive material that came with the safe harbor provision that they created, said that defendants and businesses are only allowed to comply or benefit from the safe harbor if they comply precisely with the 1991 standards. Okay. I would understand that if a bench is more than 48 inches, that it doesn't have a safe harbor. But how is there an obstruction if a person can make a lateral transfer? If the 1991 standards do not apply because the defense does not fall under a safe harbor, then the 2010 standards apply as a matter of regulation. And according to the Department of Justice, they say you shall comply with the 2010 standards. The 2010 standards provide for the 42-inch minimum, the 36-inch clear space, and the diagonal transfers. Help me out with substantial compliance, looking at the 1991 standards. They mention only parallel. I'm just trying to be a designer. I'm really not against you. I'm just trying to be fair. But it seems to me that somebody designing this could say, look, we're going to go the length of the while. We do allow for parallel transfer. Yes, we are making it longer than the mandatory 48, but it's really substantially equivalent to what's being requested, being regulated or being whatever suggested. Boy, forgive me. I lost the question. Well, that's because I went too long. Why isn't the 60-inch substantial equivalence if the only requirement in the 1991 regulations was parallel transfer? The best answer I have for that is that, well, let me take a step back. As Judge Carney said in Rush, the Department of Justice created a 48-inch long bench for a reason. And the Department of Justice also said that when you're doing equivalent facilitation, it should be the exception, not the rule. For example, could they go a 60-inch long bench and provide equivalent facilitation? And I would say yes, if, however, there was a special circumstance, and that's the language the Department of Justice used, where a longer bench is required. And once again, I was thinking about this on the drive over. Assume, arguendo, you had a morbidly obese patient, someone who does not fit in a standard wheelchair and would not fit on a standard bench, and you were at a facility that treated morbidly obese individuals. Then you could, under the Department of Justice's analysis, could have a longer bench, assuming you designed it for that purpose in the first place. But simply not complying with the design. There has to be a method to your madness. Simply not complying with the standards in run-of-the-mill, everyday situations creates an exception that swallows the rule. Well, for a designer, unrelated to the ADA, there might be a reason. It might be easier to make it 60 inches. But if you haven't interfered with parallel transfer, so what? So what is that? Under your scenario, we are not entitled to receive the diagonal transfer that we're now entitled to. All right. I have two and a half minutes. I'd like to reserve the rest of my time. Good morning, Your Honors. May it please the Court, David Peters for Defendant Flava Enterprises. Most of the points that need to be made are in the briefs, and I know those have been considered. It's very obvious from the discussion up until now. Mr. Hubbard said that there would be no problem if there were walls on three sides of a 48-inch bench. As we said in the briefs, a person designing their facility could put a support column, a bookcase, a planter, etc., and that would absolutely deny the ability to make a diagonal transfer. I have members of my family in wheelchairs and many friends, and if all you have is 12 inches, you can't do a diagonal transfer. So as Your Honor correctly pointed out, under the 91 ADAG, all it talks about is a parallel transfer, and the bench that was provided provides that. All the defendant did in this case was instead of putting a third wall, instead of putting a support column or a bookcase or a planter, we provided additional bench. Are you saying, among other things, that one cannot infer from the 48 inches of the 1991 regulations that what was intended was to also provide for diagonal transfer? I can't see it, Your Honor. I've read them back and forth. It says parallel transfer, and I think we all accept that, and we know that that can be done with a 48-inch bench. But as plaintiff's counsel points out, even not just morbidly obese individuals, some individuals travel with caretakers and assistants, or they're carrying packages, or they need to lay the clothes down on the bench, as the plaintiff in this case testified that he did. And therefore, I think it's reasonable that the other judges who concluded that additional bench provides additional accessibility, that makes sense, and we know the 2010 standards didn't apply. We now have notice for fixtures built after March 15, 2012, which these weren't, that different standards need to be met for 2010. So I do become concerned that the discussion of the 2010 standards is really confusing the issue. This client provided a 48-inch bench, but in addition to that, he did not provide a 48-inch bench. He provided an additional bench. He provided a 60-inch bench. He provided an additional bench. Well, no, all right, he didn't provide a 48-inch bench. I don't know why you say he provided a 48-inch bench. What you're saying is if he had only provided a 36-inch bench, then he would not have provided a 48-inch bench. Right. I guess I was saying 48 inches of bench. The client provided 48 inches of bench, and they felt went beyond that by providing more accessibility. That's a good question. I mean, that's a legal question of whether the term at least as used in other sections and the omission of that term here, that's a legitimate argument. I mean, you may say that arguments overcome. I mean, I think you could visualize yourself making such an argument if some section said at least and one said exactly 48 without saying at least. I mean, that's an argument. And maybe that argument is not strong enough to carry the day because you think the regulation as a whole really is only intended to deal with parallel and not with diagonal. But there's no doubt that there is. It's not a 48-inch bench. It's a 60-inch bench. And if that section that says you must provide a 48-inch bench means at least a 48-inch bench, then each side has an argument at least. I understand, Your Honor, but if I may respond, the 12 inches, since there is no requirement for clear floor space in the 12 inches, I think the argument is greater that additional bench length provides additional better accessibility because that 12-inch area cannot be used for diagonal transfer. It won't work. And again, if we could have put in a third wall, we wouldn't be having this conversation. So I apologize. I'm having a very difficult time if I'm hearing Mr. Hubbard say that it would be fine if we had a third wall in that area. That would absolutely preclude any hope of a diagonal transfer. I can't understand how additional bench length in that area, for members of my family, that would provide additional accessibility. I apologize. I can't understand the argument. Judge Reinhart's question does get into the area, which I just assume not get into at all, the attorneys' fees issue. I mean, it's not a one could disagree with it, but it's not frivolous. And if it's not frivolous, is there really anything in the record to support your request for attorneys' fees for an unrelated reason? Excuse me, Your Honor. All of the other claims failed. In fact, of the three claims in the initial complaint, two were clearly false that we were able to prove it. That raises significant concerns. Then, with leave of court, plaintiff filed an amended complaint that added two new claims, which also failed. They simply weren't required by applicable law. As to those first two claims that failed, we had proof. We had digital pictures emailed in 2009 that showed that the conditions represented had already been fixed. Mr. Kohler testified he did not visit until 2010 and could not possibly have encountered the conditions claimed in the first complaint. And he gave us a bunch of different positions and explanations, but none of that justified it. So, that leaves us with this one issue. After all of the other issues failed, and there is a question of whether it would truly provide better accessibility. When I hear things like, if there was a third wall, we'd be fine, but because there's additional bench length, we're not? I can't see merit to that when there was no requirement for a diagonal transfer under the 1991 standards. I apologize. I can't see the difference between that and frivolous. I understand where the court's coming from. But I do think the situation in the Plaza Bonita case, which relates to exactly the same real property, exactly the same defendant, and I might add, exactly the same dressing room bench. I think if we don't consider both halves of that story, we can't reach an effective conclusion about what really happened in the case. Anyhow, again, to be arguing in 2015 about a 2009 case on an issue that a third wall would have been acceptable. How is that fair to a small business defendant that was already making changes under the 2009 case when plaintiff's counsel filed this case? That raises to me something which I don't think is present in this case, but I'm just curious. If a plaintiff points out a problem and it is corrected, as I understand briefs in other cases, that moots the issue. Can attorney's fees be recovered? And so injunctive relief cannot be obtained. Does that mean that the plaintiff who brought the problem to the attention of the defendant cannot recover attorney's fees as to that issue? Not necessarily, Your Honor. First of all, by fixing it, I assume we're talking about a compliant fix. A compliant fix that moots the issue. I think the plaintiff can still contend, and certainly under state law claims, say under the Unruh Act, the Civil Code 52A, that relates to what conditions did the plaintiff encounter on his visit, not whether they were fixed later. So financial damages could still apply. But as to relief under the ADA, I think the plaintiff can contend that he, as plaintiffs have in many matters, even if things were fixed, they claim they were the prevailing party, that it was their litigation that prompted the defendant to make changes. I just don't know. No, no, no. I confront this where the issue, only where it's a lot of issues go away because they're mooted, because it's fixed. Well, we would hope that if there's a need to make changes, that they're made quickly. And I guess that's our point. When the client was already making changes under the Hubbard v. Plaza Benita case, within the 12 months that plaintiff's counsel had agreed to, to then come in and file a new action for injunctive relief seems unreasonable. You should have built a 48-inch wall. Had we only known plaintiff's position, Your Honor. Counsel, Judge Gould with a question for you. My understanding on Judge Motz's question is that if a plaintiff said this doesn't work, make changes, and they make changes, that the plaintiff can then claim they're a prevailing party under the ADA, at which point attorney fees are discretionary, not mandatory. Is that right? Thank you, Judge Gould. I think that may be correct. It is correct. Judge Gould is right. Yes, that their lawsuit caused the party to make changes. Understood. All right. Is that it? I think I have four minutes left, so if I can reserve. I was asking whether you withdrew or whether you were continuing. Oh, I couldn't quite hear you. I'm sorry. No, I said I was just asking whether you withdrew or whether you were planning on continuing. I'm through unless the court has any questions.  Thank you, Your Honors. I'll talk fast. Let me ask you a question. I didn't quite understand what you were saying. Were you saying that if they had a 48-inch bench, it would have been perfectly fine for them to then build a wall at the end of that 48-inch bench? Yeah, it would be. So then the 48-inch bench does not assure the diagonal transfer? They can, and yes, that's absolutely true. Thank you. Mr. Hubbard, another question on that. If there's a 48-inch bench but a 60-inch wall space, is there any requirement that they keep the floor clear to the side of the 48-inch bench? I would say yes on that one. Primarily because... On what basis? Because I heard your friend on the other side say that there is no requirement, and I wasn't aware of any on the floor. With respect, the only reason I say yes with a pause is that there's long-established case law that you have to keep a... I have 36 seconds, Your Honor. All right, fair enough. You have to maintain the usability of otherwise accessible facilities. So for example, if the client cannot use the bench because they have something blocking in it, in theory it affects his usability based on this court's past precedent and the Department of Justice interpretations. I would understand that if there was some blockage that would block a parallel transfer, but if the blockage, let's say there's a plant on the floor, if it didn't affect parallel transfer but just affected diagonal transfer, what is there in the regs that would support you? I would look to 36.211 in that respect, isolated temporary interruptions. At that point, if they needed it to do it, they would, in theory, request to have it removed so they could use it. Much like I'm drawing, in my own mind, I'm going to Fortney. Fortney versus AMC, which is a published opinion on that subject matter, and also Chapman versus Pier 1, where they were blocking otherwise accessible aisles with merchandise. The answer also lies in the fact that whatever the law says, any good store manager sufficiently sensitive to ADA issues would clean that space. But one point I do want to make, forgive me on this one, is that the defense didn't offer any facts into evidence that the longer branch provided equivalent facilitation. They provided expert testimony that said equivalent facilitation, excuse me, 48 inches was a minimum, not a maximum. So it was a legal argument that got us here, not a factual argument. If the defense had presented a factual, as Judge Carney said in Rush, and other courts have said also, equivalent facilitation is a fact-based inquiry. There's a line of cases in the district court, and I would urge the court to do this the same, saying that equivalent facilitation as a matter of law is a bad idea. It's a highly specific fact-intensive inquiry. So if they had a reason for providing a longer bench, for example, the morbidly obese, or for some strange reason so that an attendant could sit next to them, some reason they should have put it in the record. That's the only point I wanted to make. Since I'm way over my time, I would just ask the clearly false stuff I addressed in my brief, and if the court wants me to touch on Hubbard-Plaza Benita, I will. All right. Thank you, counsel. Thank you. Thank you, Your Honors. Just a couple of clarifications. Wait, wait, wait. Sorry. We've had the plaintiff, and then you, and then the plaintiff. Oh, we do. Sorry, Your Honor. Okay. Nice try. The case just argued will be submitted. The next case is Kohler v. Eddie Bauer.
judges: Motz, Reinhardt, Gould